UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
JULIO RODRIGUEZ,                                            :
                                                            :
                              Plaintiff,                    :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
              - against -                                   :
                                                            :   14 Civ. 4960 (BMC)
NEW YORK CITY HEALTH AND                                    :
HOSPITALS CORPORATION, individually                         :
and d/b/a Elmhurst Hospital Center, and                     :
MANNY LACAYO, individually,                                 :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging gender and/or sexual orientation discrimination.[1] Specifically, he maintains that he was denied employment by defendants based on his status as a male and/or bisexual, and that he was a victim of *quid pro quo* sexual harassment. Plaintiff also brings related claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et seq., as well as a claim against defendant Lacayo for "aiding and abetting" discrimination. Before me is defendants' motion for summary judgment. For the following reasons, defendants' motion is granted.

## BACKGROUND

The material facts of this case are not in dispute. Plaintiff is a bisexual male. Defendant Lacayo, a gay male, is a Senior Associate Director of the Managed Care Department of Queens

---

[1] Plaintiff has withdrawn his claims for hostile work environment and retaliation.

Health Network, which is part of defendant New York City Health and Hospitals Corporation ("HHC").

On September 23, 2013, plaintiff submitted a cover letter and resume for an Assistant Health Care Program Planning Analyst ("HCPPA") position at Elmhurst Hospital Center, one of HHC's facilities. HCPPAs are customer service representatives for HHC health plan members. The HCPPA job description posting listed the following minimum qualifications:

1. A Baccalaureate Degree from an accredited college or university in Business Administration, Engineering or Social Science, Health Care Specialization, Physical Sciences or related program; or,

2. High School graduate with four years of experience related to Health Care Program Planning, Research, Design, Operation, Evaluation and Analysis; or,

3. A satisfactory equivalent combination of training, education and experience; and,

4. Demonstrated skills in written and oral communication.

Lacayo received plaintiff's application, and interviewed him for the HCPPA position on September 26, 2013. The record demonstrates that plaintiff graduated from high school in 2001 and does not have a college degree – he completed one semester at Salem State College, where he studied business and finance, and one-quarter semester at Metropolitan College, where he studied human services, before dropping out of both institutions. Although plaintiff has some experience using certain relevant computer software programs, he does not have any technical training, licenses, or certifications, save for an "insurance license" that allows him to sell property and vehicle insurance. Furthermore, plaintiff does not have four years of relevant health care experience. He worked at NYU Langone Medical Center as a pre-admissions specialist for one year and four months and for HHC as a clerical associate for five months.[2]

---

[2] Plaintiff's deposition testimony conflicts with the resume and cover letter he submitted in support of his application regarding the durations of his employment at these two jobs. Plaintiff testified at his deposition that he worked for HHC for three months, though his resume states that he worked there for five months. Similarly,

2

Plaintiff had not held any other relevant health care jobs at the time he applied for the HCPPA position. He had, however, held three non-healthcare customer service positions for a period totaling approximately three and one-half years. Ultimately, plaintiff was not hired for the HCPPA position.

The candidate who was hired, J.M.,[3] was interviewed by Lacayo two days before plaintiff, on September 24, 2013. J.M. is a male, holds a B.A. in social work, has certifications as a "Medical Assistant" and in "Medical Billing and Coding," and has over four years of relevant health care experience. Additionally, J.M. has approximately seven years of non-healthcare work experience.

On September 27, 2013, Lacayo recommended J.M. for the HCPPA position to the human resources department of the Queens Health Network. Lacayo testified at his deposition that J.M. was hired over plaintiff because he was the most qualified candidate and because he was looking for "someone with a bachelor's and [plaintiff] has not completed it yet."

Plaintiff learned that he was not hired for the HCPPA position on September 27, 2013. He alleges this fact in his complaint, and reaffirmed it at his deposition. Specifically, when asked, "what happened on September 27, 2013 that informed you that you did not get the job at HHC?" plaintiff responded, "basically when he started offering me the position with MetroPlus." This refers to the fact that after Lacayo informed plaintiff that he did not get the job, they discussed whether plaintiff could obtain a part-time job MetroPlus, a subsidiary of HHS.[4]

---

plaintiff's resume states that he worked at NYU for nine months, though he testified at his deposition that he worked there for 1 year and four months. Nevertheless, accepting the durations most favorable to plaintiff, he still concedes, as he must, that he does not possess the four years of relevant industry experience.

[3] Initials are used to protect J.M.'s privacy and confidential employment records as he is not a party to this lawsuit.
[4] Plaintiff's reasons for declining the MetroPlus position are irrelevant to the instant motion as plaintiff is not alleging any claims about his potential employment with MetroPlus.

3

Between September 26, 2013 and October 17, 2013, plaintiff and Lacayo exchanged hundreds of text messages, in many of which Lacayo was unprofessional and crude. On October 4, 2013, Lacayo told plaintiff that during the interview, " . . . I thought you were sexy & was looking at your bulge." Then, in response to plaintiff's text message, "[Wh]y didn't [yo]u hire me [?]" Lacayo responded, "[t]he other guy had better qualifications…. " Thirty seconds later, he texted:"Plus at the end of the interview gave a good long kiss." Plaintiff then wrote, "[s]o if I would of kissed [yo]u I could of got it lol [?]" to which Lacayo responded, "[h]ard to tell…I know him from Facebook for a while. So that's why the kiss happened. Not really why I chose him." In answering a question from Lacayo regarding whether or not plaintiff would have "fooled around" at the interview, plaintiff asked, "[w]ould it have guaranteed me the job lol[?]" Lacayo later replied, "[y]es I love dick." At his deposition, Lacayo testified that the kiss between himself and J.M. was "probably a peck on the cheek . . . it was meant as a joke, too."

Finally, plaintiff testified at his deposition that he perceived no sexual advances from Lacayo through October 4, 2013. Specifically, he was asked, "[f]rom September 26th through October 4th, did you feel that Mr. Lacayo was making sexual advances towards you?" Plaintiff responded, "I didn't see anything of it. No." He was again asked, "No sexual advances?" He again answered, "I don't think so." Plaintiff also admits that Lacayo never asked him to engage in any sexual acts for the HCPPA position, or for positions offered or discussed thereafter. At his deposition, plaintiff was asked, "[d]id [Lacayo] ever ask you to engage in a sexual act in exchange for a position…?" He replied, "No." Plaintiff never expressed to anyone at HHC that the messages he exchanged with Lacayo made him feel uncomfortable or unwelcome.

**DISCUSSION**

**I.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine factual issue exists when the moving party demonstrates, on the basis of the pleadings and admissible evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no reasonable jury could find in the non-movant's favor. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996). A party may not defeat a motion for summary judgment by relying on unsupported assertions, conjecture, or surmise. See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).

**II.**

Claims for discrimination for failure to hire under Title VII are evaluated under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct.1817 (1973). First, a plaintiff alleging failure to hire must prove a *prima facie* case by showing by a preponderance of the evidence that that: (1) he is a member of a protected class; (2) he is qualified for the position sought; (3) he was rejected from the position; and (4) after his rejection, the employer continued to seek applicants from persons with the same qualifications of plaintiff or that the rejection occurred under circumstances that can be reasonably seen as supporting an inference of discrimination. See id. at 802; see also Gaffney v. Dep't of Info. Tech. & Telecomms., 536 F. Supp. 2d 445, 462 (S.D.N.Y. 2008). The burden on a

plaintiff to make out a *prima facie* case is minimal. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001). If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the plaintiff's claim by offering a legitimate, non-discriminatory reason for its actions. See McDonnel Douglas, 411 U.S. at 802. If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that the defendant's offered non-discriminatory reason was mere pretext and that the defendant was actually motivated by discriminatory animus. Id. at 803-04.

Here, plaintiff cannot prove his *prima facie* case, defendants have legitimate, non-discriminatory reasons for their actions, and plaintiff cannot demonstrate that the reasons are pretextual.[5]

### A. *Prima Facie Case*

There is no dispute that plaintiff meets the third factor required to demonstrate a *prima facie* case – plaintiff was rejected for the position. However, plaintiff meets none of the other three factors.

#### 1. Membership in a Protected Class

Throughout the course of this litigation, until he filed opposition to defendants' summary judgment motion, plaintiff has alleged that he was discriminated against "on the basis of his sex/gender." However, in opposing the instant motion, plaintiff has, for the first time, attempted to assert a new theory of class membership. He no longer claims that he was discriminated against on the basis of his sex/gender, but because he is a bisexual. His new theory fails.

The Second Circuit has decided the question of whether "sex" under Title VII includes "sexual orientation" as a protected class. See Simonton v. Runyon, 232 F.3d 33 (2d Cir. 2000).

---

[5] Plaintiff's failure to hire and *quid pro quo* sexual harassment claims against individual Lacayo must be dismissed for a separate reason – namely, that individual defendants cannot be held liable under Title VII. See Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).

6

It has explained that "[t]he law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation." Id. at 35; see also Birkholz v. City of New York, No. 10 Civ. 4719, 2012 WL 580522, at *6 (E.D.N.Y. Feb. 22, 2012) ("Sexual orientation is not a statutorily protected class."). Therefore, plaintiff's argument that he "is clearly a member of a protected class, because he identifies as bisexual," is wrong.

As to his prior theory of sex/gender discrimination, plaintiff's opposition to defendants' motion makes no reference to it. It can therefore be deemed abandoned. See Molinari v. Bloomberg, 564 F.3d 587, 609 n.15 (2d Cir. 2009). Even if it were not deemed abandoned, plaintiff has not met the other requirements for a *prima facie* case.

2. Qualification for the Position

In order for plaintiff to meet this prong of his *prima facie* case, he need only establish a basic eligibility for the HCPPA position by showing that he possessed the basic skills necessary to perform the job. See Owens v. New York City Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991). Furthermore, plaintiff's qualifications must be measured in relation to the qualifications listed by the employer, not what he believes is reasonable. See Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997); Sarmiento v. Queens Coll. CUNY, 386 F. Supp. 2d 93, 97 (E.D.N.Y. 2005). In this case, plaintiff cannot establish basic eligibility for the HCPPA position.

The HCPPA position required applicants to have either a baccalaureate degree in certain specialized areas, or a high school diploma with four years of relevant health care experience. Additionally, the applicant must demonstrate skill in written and oral communication. In the alternative, an applicant who did not have a suitable degree or a diploma with the requisite years

7

of relevant experience could meet the qualifications by demonstrating a "satisfactory equivalent combination of training, education and experience."

Plaintiff is a college dropout, which of course means he has no baccalaureate degree. He did not even come close obtaining a degree. He completed only one semester at one college, where he studied business and finance, and one-quarter semester at another, where he studied human services. Therefore, plaintiff does not meet the first requirement for the HCPPA position.

However, plaintiff could still meet the minimum qualifications if he had a high school diploma and at least four years of relevant work experience in the health care field. While plaintiff graduated high school in 2001 and has a diploma, he concedes that he does not have four years of relevant work experience. Crediting the most favorable of his alternate versions of work experience, plaintiff has one-year and nine months of relevant experience based on his time at NYU Langone Medical Center, where he worked for one-year and four months, and at HHC, where he worked for five months. Thus, plaintiff cannot fulfill the second requirement for the HCPPA position.

Still, plaintiff has one final opportunity to demonstrate his qualification for the HCPPA position: by showing a satisfactory equivalent of training, education, and experience. Plaintiff falls woefully short here as well. Equivalency requires that plaintiff's training, education, and experience be "nearly equal" or "virtually identical" to the training, education, and experience required for the alternative minimum qualifications. *Equivalent*, Black's Law Dictionary (9th ed. 2009). Again, giving plaintiff the benefit of all inferences, plaintiff has, at most, one-year and nine months of relevant experience, plus three-quarter semesters of college (nine months), giving him about two and one-half years of equivalent experience. This total experience is not

nearly equal or virtually identical to the alternative minimum qualifications listed in the job description.

Apparently recognizing that he lacked the minimum qualifications for the position, plaintiff argues that his other three-years and five months of non-relevant customer service work is sufficient to make up the difference in equivalency. Moreover, he argues that his qualification for the position is demonstrated by the fact that he was selected for an interview in the first place. These arguments are meritless. First, plaintiff provides no support for the position that his non-relevant work experience bears any relation to the minimum qualifications listed in the job description. Although customer service is an aspect of the HCPPA position, the position also required knowledge of healthcare programs and practices that plaintiff could not have gained through his customer service positions. Consequently, plaintiff does not meet the minimum qualifications for the HCPPA position.

        3. <u>Inference of Discrimination</u>

Finally, plaintiff must prove that defendants continued to seek applications from persons with the same qualifications of plaintiff or prove that the facts in the record give rise to a reasonable inference that he was discriminated against. The record is clear that no other applicants, independent of their qualifications, were interviewed after plaintiff. Accordingly, to prevail on this point, plaintiff must allege facts demonstrating an inference of discrimination. He cannot.

It is "extremely difficult, if not practically impossible" to establish discrimination where, as here, plaintiff was passed over so an employer can hire another member of plaintiff's same protected class. See <u>Fleming v. MaxMara USA, Inc.</u>, 644 F. Supp. 2d 247, 261 (E.D.N.Y. 2009). Plaintiff is male, Lacayo is male, and the candidate ultimately hired for the position, J.M., is

male.  Since all three parties are male, it is highly unlikely that gender-based animus motivated the decision not to hire plaintiff.  Plaintiff's argument consists of little more than conclusory statements and an implicit request that the Court infer discrimination.  I cannot do so on this record, especially considering that all text messages plaintiff refers to in support of his argument were sent and received after plaintiff had already found out he did not get the job, and because plaintiff does not offer any explanation of how any text message he cites indicates discrimination.  Therefore, plaintiff is unsuccessful in showing facts sufficient to support an inference of discrimination, and in establishing his *prima facie* case.

In this regard, the date on which plaintiff learned that someone else had gotten the job defeats his claim.  Once he knew that Lacayo had picked someone else for the job, no overture that Lacayo made in the text messages thereafter could be viewed as pressuring plaintiff into a relationship in exchange for the job. Yet the record is clear, both from plaintiff's complaint and his deposition, that he learned the job had been filled on September 27, 2013.  The relevant text messages all came well after that.

To avoid the self-defeating admissions that he has made, plaintiff, in opposing defendants' motion, has attempted to offer a new version of the date on which he learned the job had been filled – his affidavit alleges that he did not know he was rejected until October 17, 2013.  However, plaintiff cannot create an issue of fact by contradicting his sworn testimony. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony").  This is especially true where, as here, the

date on which plaintiff learned he was rejected for the HCPPA position is determinative of whether the text messages he received support his failure to hire and *quid pro quo* claims.

B. *Non-discriminatory Reason*

Even assuming plaintiff could make out a *prima facie* case, defendants have a legitimate non-discriminatory reason for why plaintiff was rejected. Specifically, defendants hired the most qualified candidate – by far. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986) (holding that the defendant met its burden of providing a legitimate, non-discriminatory reason for rejecting an employee where it selected the "best-qualified candidate"). J.M. was the best-qualified candidate, and was certainly more qualified than plaintiff. J.M. had a relevant baccalaureate degree, had over four years of relevant health care experience, and held certifications as a "Medical Assistant" and in "Medical Billing and Coding." Even if plaintiff met the minimum qualifications for the job, which he did not, J.M.'s qualifications exceed those threshold requirements. Therefore, the burden would shift back to plaintiff to show that this reason was pretextual.

C. *Defendants' Non-discriminatory Reasons Are Not Pretextual*

The burden of establishing pretext is higher than that required to establish a *prima facie* case. See Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985) (explaining that at this stage, the plaintiff's "initially vague allegation of discrimination" must be "increasingly sharpened and focused"); Edwards v. City of New York, No. 03 Civ. 9407, 2005 WL 3466009, at *16 (E.D.N.Y. Dec. 19, 2005) (recognizing that "plaintiff is without the benefit of any presumptions" at the pretext stage). Plaintiff cannot make this showing.

In opposing defendants' proposed non-discriminatory reason, plaintiff relies on the purported justification made by Lacayo in a text message that J.M. was hired because he "gave a

11

good long kiss" at the end of the interview. Plaintiff has, however, selectively quoted from this text message conversation and omitted the relevant context. Lacayo wrote that J.M. got the job because he "had better qualifications," and only after that added, "[p]lus at the end of the interview gave a good long kiss." Furthermore, Lacayo wrote that the kiss was "[n]ot really the reason why I chose him." Plaintiff's reliance on that one message, to the exclusion of the others, ignores J.M.'s superior qualifications and overlooks his own clear deficiencies as an applicant. Plaintiff offers no rebuttal of Lacayo's justifications, which, although shrouded in unprofessional and coarse behavior, exhibit nothing more than that Lacayo hired the best-qualified candidate. Anti-discrimination laws do "not make employers liable for doing stupid or even wicked things; [they] make[] them liable for *discriminating* . . .." Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (emphasis in original). Defendants did not discriminate, so plaintiff's discrimination claim must be dismissed.

### III.

Plaintiff's claim for *quid pro quo* sexual harassment meets the same fate. To state such a claim, plaintiff must prove he was: (1) subject to unwelcome sexual conduct; and (2) his reaction to that conduct was used as the basis for decisions affecting this employment. See Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994). First, the record is undisputed that Lacayo did not make any sexual advances to plaintiff between September 26, 2013, the date of plaintiff's interview, and September 27, 2013, the date when plaintiff was notified of his rejection. Plaintiff also admits that Lacayo never asked him to engage in any sexual acts for the HCPPA position, or for positions offered or discussed thereafter. Without sexual advances, plaintiff does not have a viable sexual harassment claim.

Even if there were sexual advances, plaintiff never expressed to any defendant that such advances (or the text messages he exchanged with Lacayo) made him feel uncomfortable or were unwelcome. Therefore, plaintiff's claim for *quid pro quo* sexual harassment is without merit.

**IV.**

Because plaintiff's state and local law claims are based on the same operative facts as his federal claims, and because determination of plaintiff's federal claims will necessarily determine his state and local law claims, I will exercise supplemental jurisdiction over those claims. See Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) ("We have routinely upheld the exercise of pendent jurisdiction where the facts underlying the federal and state claims substantially overlapped . . . or where presentation of the federal claim necessarily brought the facts underlying the state claim before the court . . ..") (internal citations omitted). Plaintiff's NYSHRL claims are analyzed under the same framework as his Title VII claims and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII." Smith v. Xerox Corp., 196 F.3d 358, 363 n.1 (2d Cir. 1999) overruled on other grounds by Meachem v. Knolls Atomic Power Lab., 461 F.3d 134 (2d Cir. 2006). Although claims for discrimination on the basis of sexual orientation, plaintiff's newly asserted theory, are cognizable under the NYSHRL, see Rohn Padmore, Inc. v. LC Play Inc., 679 F. Supp. 2d 454, 462 (S.D.N.Y. 2010), plaintiff's claims must be dismissed for the reasons stated above.

Plaintiff's NYCHRL claims are reviewed "independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009). Courts must consider the totality of the circumstances of NYCHRL claims, and the "federal severe or pervasive standard of liability no longer applies to NYCHRL claims" and

is only relevant to the scope of damages. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 113 (2d Cir. 2013). Although the NYCHRL prohibits discrimination based on sexual orientation, see N.Y.C. Admin. Code § 8-107(1)(a), plaintiff's discrimination and sexual harassment claims, which converge, fail because no reasonable jury could find that defendants treated plaintiff differently based on his gender and/or sexual orientation. See Johnson v. Strive E. Harlem Emp't Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (explaining that the NYCHRL does not have separate standards for discrimination and harassment claims). Since plaintiff received notice that he would not be accepted for the position on September 27, 2013, any conduct by Lacayo that occurred after that date was not discriminatory. As discussed above, it also means that plaintiff was not treated differently because of his gender and/or sexual orientation, but because he was not qualified for the position. Therefore, plaintiff's NYCHRL claims must be dismissed as well.

Finally, because there is no predicate violation under either the NYSHRL or NYCHRL, plaintiff's claim for aiding and abetting against Lacayo must be dismissed. See Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 688 (S.D.N.Y. 2012).

## CONCLUSION

Defendants' motion [24] motion for summary judgment is granted. The Clerk is directed to enter judgment dismissing the complaint.

**SO ORDERED.**

                                                                  U.S.D.J.

Dated: Brooklyn, New York
        September 8, 2015